# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| D'MARCUS WILLIAMSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:13 CV 2014 DDN |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This action is before the court upon the petition of Missouri state prisoner D'Marcus Williamson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(c).

For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

The state charged petitioner with robbery in the first degree and armed criminal action. (Doc. 10, Ex. B at 15-16.) On July 7, 2010, a jury in the Circuit Court of the City of St. Louis found petitioner guilty of robbery in the first degree, but not guilty of armed criminal action. (Id. at 47-48.) On August 27, 2010, the circuit court sentenced petitioner, as a prior offender, to twelve years imprisonment for first degree robbery. (Id. at 60; Ex. A at 262.)

Petitioner directly appealed his conviction and sentence to the Missouri Court of Appeals. (Doc. 10, Ex. C.) His sole contention on appeal was that the trial court erred in not declaring a mistrial after Det. Amy Funk testified that petitioner was "actually incarcerated for another crime." (Id. at 10.) The conviction and sentence were affirmed on direct appeal. (Id., Ex. E.)

Petitioner also filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15, alleging that his trial counsel rendered constitutionally ineffective assistance for failing to request the trial court to submit the lesser-included offense of robbery in the second degree to the jury. (Id., Ex. F at 34-42.) The circuit court denied the motion without an

evidentiary hearing. (Id. at 60-63.) The Missouri Court of Appeals affirmed the denial of post-conviction relief. (Id., Ex. I)

On October 9, 2013, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254.

**Trial Evidence**

The facts of the case, indicated by the trial evidence most favorable to the verdict, are as follows. On August 21, 2009, around 2:00 a.m., cousins Marcus Young and Michael Moore were in Young's car, a Chevy Monte Carlo, parked on a street. A Dodge Charger pulled up next to the Monte Carlo on the left. The passenger of that car rolled down his window and asked Young and Moore, "Is Dante in the vehicle with you guys?" Young responded, "No." Young then got out of the Monte Carlo and was walking across the street, heading for his home, when an occupant of the Dodge Charger, later identified as petitioner D'Marcus Williamson, got out and held a gun to Young's face. (Ex. A at 135-36.) Petitioner then demanded Young's keys; Young responded by throwing his car keys to petitioner. (Id. at 150-52.) While the gun was still pointed at Young, petitioner told Young not to look at him, and also demanded that Moore "keep walking." (Id.) Once petitioner received Young's car keys he made a noise and two other individuals came from around the corner. One of these two men was carrying what Young believed to be a gun. Petitioner threw Young's keys to one of these individuals and the three of them drove off. (Id. at 154.) Young called the police immediately after these individuals left. (Id.)

Young testified at trial that the assailant looked "young" and believed him to be around seventeen. (Id. at 154.) Young also testified that the assailant was "[a] little bit shorter than me." Young stated he was six feet, two inches tall. (Id. at 151.)

Later that day, police found a car matching the description of the Dodge Charger and after a brief chase took the individual driving the car into custody. (Id. at 174.) Police took Young to the location of the arrest and asked Young to identify a gun that was on the ground there. Young informed the police that this gun was not the one which was pointed at his face, but that it looked like the second gun, the gun he observed one of petitioner's accomplices carrying. (Id. at 155.)

2

Police then put together a physical line-up of four individuals which included the individual they apprehended from the Dodge Charger. Young was unable to identify an individual from the robbery from this lineup. (Id. at 175-76.) The detective recalled Young stating that he got a good look at the primary assailant but that Young did not get a good look at the other individuals involved. (Id. at 177.)

Later that same day, the police found Young's car and were able to lift fingerprints from it. (Id. at 184.) A fingerprint examiner concluded that one of these fingerprint lifts matched petitioner's left thumb. (Id. at 193.)

On September 17, 2009, Young identified petitioner in a photo lineup as the individual who held a gun to him and took his keys on August 21, 2009. (Id. at 201.) On September 29, 2009, the police made up a physical lineup, during which Young identified petitioner as the assailant again. (Id. at 158-59, 206.)

During jury voir dire petitioner's attorney asked the venirepersons whether petitioner's prior guilty plea to carrying a concealed weapon would have any effect on determining petitioner's guilt under the present charge. The venirepersons all answered in the negative. (Id. at 88.)

During the trial, petitioner's attorney cross-examined Young regarding the gun used during the robbery. (Id. at 162.) Young stated that the gun that he was shown did not look like the gun that was pointed at him, but could perhaps have been the gun one of petitioner's accomplices carried. (Id.) Petitioner's attorney read Young his previous statement in which he stated that he was sure that the gun the police asked him to identify was not either of the two guns involved in the robbery. (Id. at 165.) Young explained his statements and testified he told the police officer, "Yes, that looks like the gun. I can't say it's the exact same gun though." (Id. at 166-67.) There was never any evidence presented to the jury that the gun used by petitioner was found or identified by Young.

Later during the trial Det. Amy Funk testified regarding the fingerprint identification. (Id. at 198.) Prior to her testimony two police witnesses testified about finding a fingerprint on Young's Chevy Monte Carlo and matching that print to petitioner's. (Id. at 159, 184, 193-94.) She then testified as follows:

> [MS. GILLIAM, THE PROSECUTOR]: Okay. And so after they had let you know that D'Marcus Williamson's fingerprint was on the car, what did you do?

3

> A: At that point, I conducted a computer inquiry of Mr. Williamson. I noticed that his physical appearance had some strong similarities to the victim's original statement on his description from the original night the incident had occurred. Based on that and the fingerprint identification, we put him in a photo spread to be shown to the victim. He was actually incarcerated at the time on another crime –
>
> [DEFENSE COUNSEL]: Objection, your Honor. May we approach?
>
> THE COURT: Please approach.
>
> * * *
>
> THE COURT: Ms. Gilliam.
>
> [DEFENSE COUNSEL]: I would ask for a mistrial at this time. I think it's unfairly prejudicial.
>
> MS. GILLIAM: I'm asking the jury can be instructed to disregard it, and I mean it doesn't say what. It could have been a traffic ordinance. It could have been anything. She didn't say what it was. She just said he was incarcerated. I think if the jury is instructed to disregard it, it would be curative.
>
> THE COURT: I'm not sure if it's curative or not. I will hold my opinion. I will ask the jury to disregard it and I'll still consider it.
>
> MS. GILLIAM: Okay.
>
> THE COURT: Okay.
>
> (The proceedings returned to open court.)
>
> THE COURT: The jury will disregard the last remark. All right.
>
> [MS. GILLIAM]: Okay. So after you looked at the description, what did you do?
>
> A: We put him in a photo spread at that point.

(Id. at 199-200.) Later, the court denied defense counsel's request for a mistrial, stating, "In voir dire, you indicated that [petitioner] had a previous offense. So it is no secret to the jury that he has a previous offense." (Id. at 203.)

Later during trial, petitioner testified. (Id. at 213.) He admitted his prior offense of carrying a concealed weapon, for which he received three years probation. (Id. at 214.) Petitioner also testified to the jury that, on the evening of the incident, he was down on the

4

riverfront trying to purchase speakers from an individual driving a Chevy Monte Carlo. There he discussed the purchase, but he did not have all of the $200 purchase price. The sale did not go through, and he denied being involved in any robbery that evening. (Id. at 215-17.)

The jury convicted petitioner of robbery in the first degree but found him not guilty of armed criminal action. (Doc. 10, Ex. B at 47-48.)

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges two grounds:

(1) The trial court erred in denying petitioner's request for a mistrial after detective Amy Funk testified that petitioner was incarcerated for another crime at the time she ran a computer inquiry of him.

(2) Trial counsel rendered constitutionally ineffective assistance by failing to request that the jury be instructed on the lesser-included offense of robbery in the second degree.

(Doc. 1 at 6-7.)

## III. STANDARD OF REVIEW

Congress requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d) (1)-(2).

A state court's decision is contrary to clearly established federal law, if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 559 U.S. 43, 47 (2010) (per curiam) (citation omitted). This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court

5

identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 559 U.S. at 47.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e) (1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d) (1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U. S.C. § 2254(e) (1); Wood, 558 U.S. at 293.

## IV. DISCUSSION

### A. Ground 1

In Ground 1, petitioner argues that the trial court erred in denying his motion for a mistrial once the State's investigator, Det. Funk, testified that petitioner was incarcerated for an unrelated manner after she matched petitioner's fingerprints to the fingerprints found on Young's vehicle.

"Only where admission of evidence is so prejudicial as to constitute a denial of due process will federal courts intervene in state proceedings on petition for writ of habeas corpus. Introduction at trial of evidence of prior crimes is a matter of state evidentiary law and thus will ordinarily not be subject to review in federal habeas corpus proceedings." Cunha v. Brewer, 511 F.2d 894, 898 (8th Cir. 1975) (quoting Parker v. Swenson, 332 F. Supp. 1225, 1229 (E.D. Mo. 1971)); Keyes v. Bowersox, 230 F. Supp.2d 971, 975 (E.D. Mo. 2002). No due process violation exists regarding admission of prior crimes against a defendant unless the testimony was "so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [defendant] of fundamental fairness." Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir.1986); Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996). In deciding the magnitude of prejudice, a court must review "the totality of the facts in the case and the fairness of the whole trial." McDaniel v. Lockhart, 961 F.2d 1358, 1360 (8th Cir. 1992). To this end it is important to place the prejudicial statement in context. Greer v. Miller, 483 U.S. 756, 765-66 (1987). Factors that help determine if the prejudice of a comment is so great as to violate due process include: whether the prosecutor deliberately solicited the prejudicial comment, whether that the comment was isolated and brief, and whether the trial judge immediately struck the comment and

6

instructed the jury to disregard the prejudicial statement. Batten v. Scurr, 649 F.2d 564, 569 (8th Cir. 1981).

The Missouri Court of Appeals considered petitioner's federal habeas Ground 1 on direct appeal. (Doc. 10, Ex. E at 2) ("[Petitioner] alleges that because Detective's comments were inadmissible and prejudicial, he was deprived of his right to a fair trial.") The appellate court then considered the circumstances before the trial court, including the record made during the voir dire examination of the potential jurors:

> During voir dire, [petitioner's] counsel informed the venirepanel that the jury would hear [petitioner] testify and he would testify regarding his criminal history. [Petitioner's] counsel polled the venirepanel to discover any potential prejudices once they learned [petitioner] had a criminal history. There was no one on the venirepanel who believed [petitioner's] history would impact the way each venireperson would determine [petitioner's] guilt or innocence in this case.

(Id.) The Court of Appeals also considered what actually happened at trial:

> During [petitioner's] trial, Detective testified on direct examination regarding the fingerprint examination. After she stated the fingerprints collected were a match to [petitioner], she was asked, "And so after they had let you know that [petitioner's] fingerprint was on the car, what did you do?" Detective narrated her actions . . . .

(Id. at 3.) The state appellate court then reasoned:

> In determining the prejudicial effect of an unsolicited reference to other crimes, courts look to the following factors: (1) whether the statement was voluntary and unresponsive; (2) whether the statement was singular and isolated, or emphasized by the prosecution; (3) whether the statement was vague and indefinite, or made specific references to a crime committed by the accused; (4) whether the court promptly sustained defense counsel's objection to the statement and admonished the jury to disregard the statement; and (5) whether the statement played a decisive role in the determination of guilt in view of other evidence presented and the strength of the prosecution's case. . . . Detective's statement was voluntary, singular, and made during a narration of what she did after the identification of Defendant's fingerprint. Her remark did not reference a specific crime committed by Defendant. The trial court promptly sustained the objection and instructed the jury to disregard her comment. This Court presumes the jury followed the trial court's instructions when directed to disregard improper answers. . . . Additionally, the jury was already privy to the information that Defendant had a prior conviction, and Defendant testified.

(Id.)(internal citations omitted.)

The decision of the Missouri Court of Appeals was entirely supported by the factual record and involved a reasonable application of federal law. There has been no showing of "conspicuous prejudice" on the part of the petitioner. As the Missouri appellate court stated, the statement in question was a response to a question of how Det. Funk was able to identify petitioner. Her statement was immediately objected to, and the court instructed the jury to disregard Det. Funk's testimony on that matter. "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it." Greer v. Miller, 483 U.S. 756, 767 (1987). Further, the prosecutor's question: after you knew it was petitioner's fingerprint, "what did you do?" does not suggest that Funk's comment regarding petitioner's incarceration was solicited. Also, the comment was brief and isolated, detective Funk did not elaborate on petitioner's imprisonment once she was immediately objected to. Further reason to conclude that petitioner did not suffer "conspicuous prejudice" comes from the context of the statement. There was no suggestion of why petitioner was imprisoned. Petitioner had already told the jury in voir dire that he pled guilty to carrying a concealed weapon. All venirepersons responded that this would not affect their judgment of the present case.

Finally, because petitioner planned to testify on his own behalf, his prior criminal convictions would have been admissible to impeach him. State v. Chambers, 891 S.W.2d 93, 112 (Mo. 1994).

For the reasons stated above, Ground 1 is without merit.

**B. Ground 2**

In Ground 2 petitioner argues that his trial counsel's failure to request that the jury be instructed on the lesser-included offense of robbery in the second degree violated his constitutional right to not be deprived of effective assistance of counsel. Petitioner alleges that, if the jury had been so instructed, there was a reasonable probability that he would only have been found guilty of the lesser offense.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Fourteenth and Sixth Amendments. Under Strickland, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

8

Petitioner must prove two elements to prevail on a claim of ineffective assistance of counsel. First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. There is a strong presumption that counsel's actions were "sound trial strategy." Id. at 689. Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. Id. at 690-91. Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. Id. at 687. To show prejudice, a petitioner must show that but for counsel's errors there is a "reasonable probability" that the outcome would have been different. In deciding whether counsel's errors resulted in the required prejudice, a court presumes that the judge or jury acted according to the law. Id. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id. at 696.

Petitioner claims his counsel was ineffective for failing to request an instruction on the lesser-included offense of robbery in the first degree. The necessary premises of this claim are that there was a reasonable probability that: (1) the judge would have granted the requested instructions, and (2) the jury would have convicted petitioner under the lesser-included offense.

On this ground the Missouri Court of Appeals decided that the circuit court correctly ruled against petitioner. After surveying the law and facts of the case, the appellate court stated:

> [Defense counsel] cannot be found ineffective for failing to request an instruction for second-degree robbery where his theory was actual innocence.
> Moreover, a defendant is not entitled to an instruction on a lesser included offense unless the instruction is supported by the evidence and inferences flowing therefrom. Two eyewitnesses – the owner of the stolen vehicle and his friend – testified that a gun was used to steal the vehicle. [Petitioner] simply claimed that he wasn't the culprit. Nothing in the record suggests a version of events in which the offense was committed without a weapon. In short, there is no evidentiary basis for the lesser instruction. As such, counsel was not ineffective for failing to request it, and there is no reasonable probability that its absence affected the outcome of the trial. In other words, [petitioner] cannot establish prejudice.

(Id., Ex. I at 3-4.)

The Missouri Court of Appeals applied federal law to a factual record on the relevant issues about which there was no substantial dispute.

Accordingly, Ground 2 is without merit.

## V. CONCLUSION

For the reasons stated above, the petition of D'Marcus Williamson for a writ of habeas corpus is denied. Because petitioner has made no substantial showing of the denial of a constitutional right, the court does not issue a certificate of appealability. 28 U.S.C. § 2253 (c)(2).

An appropriate Judgment Order is issued herewith.

                                              **/S/ David D. Noce**
                                         **UNITED STATES MAGISTRATE JUDGE**

**Signed on June 24, 2015.**